**STATE of Tennessee, Appellee,**

v.

**Thomas Carroll SHORT, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 31, 1985.

Permission to Appeal Denied by Supreme Court Sept. 3, 1985.

---

2. *Kirby v. State,* Tenn.Cr.App., Nashville, December 1984, filed January 8, 1985.

Jim Weatherly, Public Defender, Gary Mason Jones, Asst. Public Defender, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., Bettye Springfield-Carter, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Mary Hausman, Dan Hamm, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

SCOTT, Judge.

The appellant was convicted of two counts of armed robbery for each of which he received a sentence of forty years in the state penitentiary. The sentences are to be served concurrently. He was also convicted of aggravated assault with a deadly weapon for which he received a sentence of ten years in the state penitentiary to be served consecutively to the other sentences. On appeal he has presented two issues.

In the first issue the appellant contends that the trial judge erred by overruling his motion to suppress the identification testimony of one of the victims. A brief recitation of the facts will place this issue in context.

Gerald and Marilyn Ziegler operated a convenience market at 1907 Eastland Avenue in Nashville. On Saturday, August 6, 1983, shortly after their 9:00 P.M. closing time, there were still three people in the store, a couple and a man. Mr. Ziegler was stocking the drink coolers. After the couple left, the man put a gun to Mr. Ziegler's head and said, "This is a stick-up," to which Mr. Ziegler replied, "Oh, you're kidding." The man then said, "This is a .357 and I mean business." He then marched Mr. Ziegler to the cash register where Mrs. Ziegler was working. Then man demanded the money and Mrs. Ziegler opened the cash register and gave it to him. In addition, he demanded and received the contents of Mr. Ziegler's wallet and Mrs. Ziegler's purse.

Seizing upon an opportunity to do so, Mr. Ziegler grabbed the man's gun arm, caus-

ing the man to stagger and fall into a display. As he did so, the gun fired and a bullet went past Mr. Ziegler's ear. The man got back up and asked Mrs. Ziegler, who was trying to call the police, what she was doing. He then fired a shot at Mrs. Ziegler. It missed her. He then fled from the store.

Later, Mr. and Mrs. Ziegler were asked to look at several arrays of photographs. Mr. Ziegler was never able to identify anyone. The first two times that photographs were brought to her, Mrs. Ziegler was unable to identify anyone. The third time an array was presented to Mrs. Ziegler, the appellant's photograph was included. She instantly and positively recognized him. Later, she made a positive in-court identification.

Mrs. Ziegler described the appellant as a "nice," "good looking" young man in his early twenties, with pretty blue eyes. He reminded her of her own son. He had long shoulder length bleached blonde hair that was curly on the ends. She also noticed that he had two tattoos on the inside of his left arm.

The appellant was arrested on August 19, 1983 at a convenience store, because he was an escapee from the Tennessee State Penitentiary. At the time of his arrest, he was dressed in shorts, without a shirt, because he and his companions had been to an outing on the lake. His mug shot was taken with him in overalls, without a shirt. A tattoo on his right shoulder appears in the photograph. It was this photograph that was later shown to Mrs. Ziegler. The appellant contends that because the tattoo is visible in the photograph, the identification procedure was unduly suggestive.

Constitutional due process is violated if a pre-trial identification procedure is so suggestive as to render the identification unreliable. If a witness' in-court identification is tainted by an unconstitutional pre-trial identification procedure, then the in-court identification is not admissible. *State v. Shanklin,* 608 S.W.2d 596, 598 (Tenn.Cr.App.1980). Even if a procedure is suggestive, that does not mean that the

identification must be excluded. The United States Supreme Court has set out five factors to be considered in determining whether an identification procedure was reliable enough to withstand a due process attack even though the identification procedure was suggestive. These factors are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty of the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.,* citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In this case the entire episode at the store lasted for about fifteen minutes. Mrs. Ziegler testified that she made an extra special effort to study the appellant's physical characteristics. Her attention was focused entirely on him. She stated that she "memorized" his eyes. Her description of the appellant was exceedingly accurate, down to the most minuscule detail. She was absolutely positive in her identification of the appellant. The officer who showed her the pictures testified that she identified him within two or three seconds of seeing his photograph on August 23, seventeen days after the robbery.

While it is true, as the appellant points out, that he is the only individual in the six photographs in the array that has a visible tattoo, Mrs. Ziegler testified that she didn't even notice the tattoo until it was later pointed out to her. Furthermore, this tattoo is on the *right shoulder* in an area that would be under his shirt and not the *left forearm* as described by the witness.

While it is clear that the presence of the tattoo could be considered suggestive and that a shirt should have been placed on the appellant prior to the photograph being taken, it is equally clear from Mrs. Ziegler's testimony that the presence of the tattoo in no way influenced her identification of the appellant. This issue has no merit.

In his other issue the appellant contends that the trial judge erred by sentencing him to a Range II sentence as an "especially aggravated offender."

The trial judge found that the appellant committed an especially aggravated offense as defined in TCA § 40–35–107. The portion of this section upon which the judge relied defines an "especially aggravated offense" as follows:

(1) A felony resulting in death or bodily injury or involving the threat of death or bodily injury to another person where the defendant has previously been convicted of a felony that resulted in death or bodily injury; or

The appellant points to TCA § 40–35–107(6)(A), which, at the time of the offenses, provided as follows:

If one or more of the circumstances set out in this section that elevate the commission of an offense to an especially aggravated offense are essential elements of the crime charged in the indictment, such circumstance or circumstances shall not be used to elevate such offense to an especially aggravated offense. Provided, however, other circumstances set out in this section that are not essential elements of the crime charged in the indictment may be used to elevate an offense to an especially aggravated offense.

The appellant had a prior conviction for murder in the second degree. Thus, he "has previously been convicted of a felony that resulted in death." TCA § 40–35–107(1).

Armed robbery is the felonious and forcible taking of property from the person of the victim by violence or by putting the person in fear, a deadly weapon being employed in so doing. TCA § 39–2–501(a).

■ An aggravated assault with a deadly weapon is an attempt to cause bodily injury to another with such a weapon. TCA § 39–2–101(b)(2). "The threat of death or bodily injury to another person" is obviously an element of each of these offenses. Therefore, under TCA § 40–35–107(6)(A), the appellant could not be sentenced for "an especially aggravated offense" for the reason found by the trial judge.

However, the appellant was properly sentenced to a Range II sentence as the offense was an especially aggravated offense for another reason. TCA § 40–35–107(4) provides:

A felony committed while on escape status or while incarcerated on a felony if the felony committed results in death or bodily injury to another person.

These crimes occurred on August 6, 1983. This subsection of TCA § 40–35–107 was effective May 26, 1983. Chapter 406 §§ 2 and 19, Public Acts of 1983.

■ Since this was "a felony committed while on escape status," the appellant was properly found to have committed an "especially aggravated offense." The trial judge was required to sentence him to a Range II sentence. TCA § 40–35–107(7) and 40–35–109(c). He reached the right result for the wrong reason. The sentencing issue has no merit.

Finding no merit to either issue, the judgment is affirmed.

DAUGHTREY and TATUM, JJ., concur.