(239 P.3d 103)
Nos. 101,530
101,531

STATE OF KANSAS, *Appellee*, v. VALENTINA HERNANDEZ, *Appellant*.

Opinion filed September 17, 2010.

*Meryl Carver-Allmond,* of Kansas Appellate Defender Office, for appellant.

*Don L. Scott,* county attorney, and *Steve Six,* attorney general, for appellee.

Before HILL, P.J., PIERRON and LEBEN, JJ.

PIERRON J.: Valentina Hernandez appeals from her convictions for two counts of attempted first-degree murder, criminal discharge of a firearm at an occupied vehicle, and making a criminal threat. We affirm.

This appeal involves two cases that were tried separately and consolidated for appeal. In 07-CR-356, Hernandez was charged with two counts of attempted first-degree murder, criminal discharge of a firearm at an occupied building or vehicle, and misdemeanor criminal damage to property. In 07-CR-392, she was charged with making a criminal threat.

*07-CR-356*

Daniel Lozano was sitting at a Taco Bell drive-through window with Ernesto Magallanes in Liberal, Kansas, when he noticed John Collins and a woman ordering food inside. The woman motioned for Lozano and Magallanes to wait where they were and she left the restaurant. Lozano next saw the woman when she drove around the corner of the building in a green, four-door vehicle and parked. Lozano noticed the car had a Texas license plate. The woman took a gun out of the trunk and placed it on top of the car. Lozano and Magallanes began to drive away, and the woman began shooting at them. Bullets struck the rear or side of the truck and one went

through the back window. Lozano described the gun as "a long rifle."

Lozano testified the woman was wearing Capri pants and a maroon shirt. He testified he got a good look at the woman at the time of the shooting but did not know her name or that she was Collins' mother. He could not identify Hernandez as the shooter in a police photographic lineup. He actually identified another individual as someone who "kind of looked like the shooter." He did notice a tattoo on the woman's neck. Magallanes was also unable to identify Hernandez in a photographic lineup right after the shooting.

Jessica Mendez was working at Taco Bell on the day of the shooting. She saw the woman firing at the truck. Mendez testified the woman was wearing a maroon shirt that looked like a Dillon's uniform. Another Taco Bell employee told the police that a woman she had seen in the restaurant around the time of the shooting had a tattoo of "Juan" on her neck. Hernandez has a "Juan" tattoo on her neck.

Detective Lana Gudgel spoke with Hernandez the day of the shooting. She denied being the shooter. Hernandez told a detective investigating the case that one of the cars she owned was a green Daewoo registered in Texas.

An evidence and crime scene technician collected three bullet casings at the Taco Bell. Liberal Chief of Police Al Sill executed a search warrant on Hernandez' home, where he found a .22 caliber shell casing on the property. A firearms tool marks examiner with the FBI concluded the casings from both scenes were consistent with being fired from the same gun.

Jamie Brock was an inmate at the Seward County jail with Hernandez. Brock testified that Hernandez told her that her son had been involved in a gang altercation with a couple of younger guys. Hernandez and her son went looking for the individuals and found them at Taco Bell where they had "a situation." According to Brock, Hernandez made a shooting gesture when she said this and stated she had shot at the truck. Brock also testified she understood that the State would drop her drug charges if she testified against Hernandez.

*07-CR-392*

While in jail, Hernandez placed a telephone call to her father. A recording of the conversation revealed her yelling and screaming at her stepmother, Veronica Hernandez. Hernandez told Veronica that she was going to beat her up or kill her if she was not allowed to speak to her father.

Veronica testified Hernandez seemed to be upset during the telephone call and was not joking. Veronica was not scared or terrorized during the telephone call. She continued the conversation and allowed Hernandez to speak to her father. Veronica did not contact the police; they contacted her.

The jury found Hernandez guilty of both counts of attempted first-degree murder and criminal discharge of a firearm at an occupied building or occupied vehicle. A separate jury convicted Hernandez of making a criminal threat.

In 07-CR-356, Hernandez was sentenced to a controlling term of 445 months' imprisonment. In 07-CR-392, she received a controlling prison term of 17 months. The sentences were ordered to run consecutively.

Hernandez appeals from both cases.

We first address the question of whether the district court erred in granting Hernandez' request to not give a lesser included offense instruction on the attempted first-degree murder charges.

When asked during the instructions conference whether Hernandez wished to have the jury receive a lesser included offense instruction on the attempted first-degree murder charges, she declined. She now claims the court erred in acquiescing to her attorney's request because the jury could have reasonably found her guilty of attempted second-degree murder or attempted voluntary manslaughter. Hernandez obviously did not object to the failure to give a lesser included instruction, so we review the instruction given to determine whether it was clearly erroneous. See K.S.A. 22-3414(3); *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006). An instruction is clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the error had not occurred. *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007).

Hernandez acknowledges that our Supreme Court recently found in a similar scenario that the defendant was precluded by the doctrine of invited error from complaining about the lack of a lesser included offense instruction on appeal. See *State v. Angelo*, 287 Kan. 262, 280, 197 P.3d 337 (2008). However, she argues *Angelo* was wrongly decided because the statute, through the use of the word "shall," requires that a lesser included instruction be given when supported by the evidence regardless of the actions of the parties.

In making her argument, Hernandez appears to overlook other sections of the statute. K.S.A. 22-3414(3) provides, in part: "No party may assign as error the giving or failure to give an instruction, *including a lesser included crime instruction*, unless the party objects thereto . . . ." (Emphasis added.) The statute expressly requires an objection as a prerequisite to raising the failure to give such an instruction on appeal. There is no requirement that it be given in every case. Therefore, there is nothing that would preclude lesser included offense instructions from being subject to the invited error doctrine. Hernandez has not shown that *Angelo* was wrongly decided. She invited the alleged error of which she now complains and is therefore precluded from raising the issue on appeal. See *State v. Murray*, 285 Kan. 503, 522, 174 P.3d 407 (2008).

We will next consider whether the instructions on intent and premeditation impermissibly lessened the State's burden to prove attempted first-degree murder.

Hernandez asserts that a number of instructions that were given combined to impermissibly lessen the State's burden to prove that she committed attempted, premeditated, intentional, first-degree murder. Unlike in other jury instruction issues raised in this appeal, neither party mentions whether Hernandez failed to object to the giving of any of these instructions. No objection is readily apparent in the record. However, giving Hernandez the benefit of the doubt that an objection was lodged, this court must consider the instructions as a whole and not isolate any one instruction. Even if erroneous in some way, instructions are not reversible error if they properly and fairly state the law as applied to the facts of the case

and could not have reasonably misled the jury. *State v. McKissack*, 283 Kan. 721, 732, 156 P.3d 1249 (2007) (citing *State v. Edgar*, 281 Kan. 47, 54, 127 P.3d 1016 [2006]).

The instructions of which Hernandez complains read as follows:

Instruction No. 2

"The defendant is charged in count 1 with the crime of Attempted First Degree Murder. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That the defendant performed an overt act toward the commission of the crime of First Degree Murder of Daniel Lozano;
2. That the defendant did so with the intent to commit the crime of First Degree Murder;
3. That the defendant failed to complete commission of the crime of First Degree Murder; and
4. That this act occurred on or about the 28th day of August, 2007, in Seward County, Kansas.

"An overt act necessarily must extend beyond mere preparations made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act.

"The elements of the completed crime of First Degree Murder are, as follows:

"To establish this charge, each of the following claims must be proved:

1. That the defendant intentionally killed Daniel Lozano;
2. That such killing was done with premeditation; and
3. That this act occurred on or about the 28th day of August, 2007, in Seward County, Kansas."

Instruction No. 3 is identical except Magallanes' name is substituted for Lozano's.

Instruction No. 5 defines premeditation:

"Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life.

"Intentional means conduct that is purposeful and willful and not accidental. Intentional includes the terms 'knowing', 'willful', 'purposeful', and 'on purpose.' "

Hernandez refers to instruction No. 5 as the definitions instruction.

Instruction No. 7 reads:

"Ordinarily, a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its

burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

Instruction No. 7 will be referred to as the intent instruction.

Hernandez complains that the definitions instruction and the attempted murder instruction correctly require the jury to find that she intended to kill Lozano and Magallanes willfully, purposefully, and not accidentally, but the intent instruction "tells the jury to infer that Ms. Hernandez intended to kill Mr. Lozano and Mr. Magallanes simply because she committed an act that could have led to their deaths." Therefore, Hernandez concludes the intent instruction created an inference that destroyed the State's burden to prove beyond a reasonable doubt that she intended to kill Lozano and Magallanes.

To prove first-degree murder, the State must prove that the defendant killed the victim intentionally and with premeditation. K.S.A. 21-3401(a). The legislature has defined intentional as purposeful, willful, and not accidental. K.S.A. 21-3201(b).

Contrary to Hernandez' assertion, this issue has already been decided adversely to her in *State v. Stone*, 253 Kan. 105, 853 P.2d 662 (1993). There, the defendant argued that the intent instruction "created a presumption that relieved the State from proving the intent-to-kill element of second-degree murder, thereby violating his constitutional right to due process." 253 Kan. at 106. The court noted that the instruction clearly stated that the State's burden to prove the required criminal intent never shifted to the defendant. The court held that the instruction created a permissible inference of intent rather than an improper rebuttable presumption. 253 Kan. at 107.

Hernandez asserts that regardless of whether the instruction is unconstitutional, "the instruction has effectively changed the definition of intentional conduct set forth" in K.S.A. 21-3201(b). This argument is without merit. As *Stone* noted, the instruction itself references the State's burden to prove the required criminal intent. In concert with the other instructions given regarding that burden, there can be no real danger that a jury would be misled as to what the State was required to prove. As given, the instructions referenced above properly and fairly stated the law.

Hernandez next claims the district court committed reversible error in giving an outdated eyewitness identification cautionary instruction. Again, she failed to object to the instruction, and it will be reviewed to determine whether the decision to give it was clearly erroneous. See K.S.A. 22-3414(3).

The district court instructed the jury pursuant to PIK Crim. 3d 52.20, which is based upon factors set out in *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972). The instruction lists seven factors the jury may consider when considering eyewitness testimony.

Our Supreme Court considered the instruction in *State v. Hunt*, 275 Kan. 811, 69 P.3d 571 (2003): "The *Biggers* approach has been the law in Kansas and in the majority of other states." 275 Kan. at 816. The court then considered another method of analysis set forth in Utah in *State v. Ramirez*, 817 P.2d 774 (Utah 1991), which "differs from the Kansas model by using slightly different factors to evaluate the reliability of the identification." 275 Kan. at 817.

The factors in *Ramirez* for evaluating the reliability of eyewitness identifications are: (1) the opportunity of the witness to view the actor during the event; (2) the witness' degree of attention to the actor at the time of the event; (3) the witness' capacity to observe the event, including his or her physical and mental acuity; (4) whether the witness' identification was made spontaneously and remained consistent thereafter or whether it was the product of suggestion; and (5) the nature of the event being observed and the likelihood that the witness would perceive, remember, and relate the incident correctly. 817 P.2d at 781.

The *Hunt* court examined the five factors set forth in *Ramirez* and concluded:

"Though three of the four factors differ somewhat from the *Biggers* factors, they present an approach to the identification issue which heightens, in our view, the reliability of such information.

"We accept the *Ramirez* model; however, our acceptance should not be considered as a rejection of the *Biggers* model but, rather, as a refinement in the analysis.

. . . .

"We conclude that the *Ramirez* factors should be adopted as the model for examining such issues and that when requested or where such identification is a

central issue in a case, a cautionary instruction regarding eyewitness identification should be given." 275 Kan. at 818.

In *State v. Trammell*, 278 Kan. 265, 92 P.3d 1101 (2004), the defendant argued that *Hunt* stood for the proposition that PIK Crim. 3d 52.20 now incorrectly stated the law in Kansas. He argued that *Hunt* discarded the *Biggers* factors. The court rejected the defendant's argument and cited to the language in *Hunt* that the acceptance of the *Ramirez* model was not a rejection of the *Biggers* model, but rather a refinement in the analysis: "In *Hunt*, this court did not discard the prior analysis under *Biggers*. Instead, we enhanced the reliability analysis by adding the *Ramirez* factors to the *Biggers* factors." 278 Kan. at 270. The court held that *Hunt* did not address the validity of PIK Crim. 3d 52.20 and did not support the defendant's claim that the instruction is erroneous. *Trammell*, 278 Kan. at 270.

In *State v. Reid*, 286 Kan. 494, 186 P.3d 713 (2008), the court noted that *Trammell* left unanswered the continuing viability of PIK Crim. 3d 52.20 as written. *Reid* also left the question unanswered as the court concluded there was no real possibility a jury would have reached a different verdict had the instruction not been given. 286 Kan. at 517-18.

*Hunt* and *Trammell* certainly do not make it clear where the Kansas Supreme Court may be headed with PIK Crim. 3d 52.20 in the future. As it stands, the only word from the court is that there has been no explicit rejection of the *Biggers* factors. Until this changes, it is abundantly clear that giving the instruction cannot be considered clear error.

We believe there is no real possibility the jury would have reached a different verdict had the instruction not been given. The evidence against Hernandez was nearly overwhelming. Multiple witnesses saw a woman wearing clothes that matched Hernandez' work uniform shooting at the victims. The perpetrator sported the same "Juan" tattoo on her neck as Hernandez. Bullet casings found at the scene matched those found at her residence. The shooter was driving a green car with a Texas tag; Hernandez owned such a car. A jailhouse informant testified that Hernandez admitted to

the crime. Finally, Hernandez' alibi for where she was at the time of the shooting was not corroborated by anyone.

We are also asked to determine if the district court committed reversible error by giving a portion of the *Allen*-type instruction. Hernandez failed to object to the instruction at issue and it will be reviewed to determine whether it is clearly erroneous. Hernandez takes exception with the instruction given pursuant to *Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154 (1896). Specifically, he complains of the language: "Another trial would be a burden on both sides."

The State concedes the inclusion of this specific language has been found to be error. See *State v. Salts*, 288 Kan. 263, 266, 200 P.3d 494 (2009). However, the State argues, as it did in *Salts*, the clearly erroneous standard denies Hernandez relief because there is no real possibility the jury would have rendered a different verdict had the instruction not been given.

The State is correct in its evaluation of the issue. Hernandez relies on some of the eyewitnesses' inability to identify her in a photographic lineup. However, considering the summary of the evidence provided in the previous issue, there is virtually no chance the jury was persuaded by one line in a one-and-a-half-page instruction to render a different verdict.

Hernandez next claims there was insufficient evidence to support her conviction of making a criminal threat. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after a review of all the evidence, taken in the light most favorable to the State, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 (2007).

K.S.A. 21-3419(a)(1) defines a criminal threat as any threat to "[c]ommit violence communicated with intent to terrorize another."

Hernandez contends her conviction cannot stand because the evidence at trial was that she was merely attempting to convince Veronica to put her father on the telephone; there was no evidence

of an intent to terrorize from Hernandez' perspective. Further, Hernandez argues, Veronica did not feel threatened or terrorized.

While some may view Hernandez' behavior towards her stepmother as merely part of a heated family encounter, the jury apparently determined the words it heard and the manner in which those words were delivered constituted a threat to commit violence accompanied by an intent to terrorize Veronica. Hernandez did threaten to beat and/or kill Veronica. Hernandez' reliance upon Veronica's apparent lack of fear is misplaced. The victim's state of mind is not an element of the crime, only the offender's intent. Viewing the evidence in the light most favorable to the State, there is no doubt a rational factfinder could have found beyond a reasonable doubt that Hernandez intended to terrorize Veronica.

Finally, Hernandez claims the court used her criminal history score to increase her sentences in both cases without those convictions being proved to a jury beyond a reasonable doubt. Hernandez acknowledges this issue has been previously decided against her in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), and she is including the issue merely to preserve it for federal review.

We are duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Our Supreme Court has consistently cited *Ivory* for the proposition that the use of prior convictions for sentencing enhancement is constitutional. See *State v. Fischer*, 288 Kan. 470, 476, 203 P.3d 1269 (2009). *Ivory* controls, and Hernandez is entitled to no relief.

Affirmed.

\* \* \*

LEBEN, J., concurring: I join the court's opinion except for the analysis of the defendant's claim that the district court erred by using an outdated instruction on how to evaluate eyewitness testimony. I agree with my colleagues that there was no real possibility that a different verdict would have been reached in this case had another eyewitness instruction been given, and I would affirm on that issue solely on this basis. Because of the strength of the evi-

dence against Hernandez, this is not an appropriate case in which to wade through the legal thicket regarding what might constitute a proper eyewitness instruction. See *State v. Reid*, 286 Kan. 494, 514-18, 186 P.3d 713 (2008); *State v. Mitchell*, 2009 WL 311814, at *2-3 (Kan. App. 2009) (unpublished opinion), aff'd 294 Kan. 469, 275 P.3d 905 (2012).