NOT DESIGNATED FOR PUBLICATION

No. 112,204

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICKY DAVIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed October 23, 2015. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Susan Alig*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN, J., and JEFFREY E. GOERING, District Judge, assigned.

*Per Curiam*: A jury convicted Ricky Davis of one count of possession of cocaine. Davis appeals. On appeal, Davis first argues that the trial court erroneously instructed the jury not to engage in certain activities that would constitute juror misconduct because a resulting mistrial would involve "tremendous expense and inconvenience." Second, Davis argues that the oath administered to the jurors was in error because requiring jurors to swear to render a true verdict foreclosed the possibility of a hung jury. Third, Davis argues that the trial court violated his right to be present at all critical stages of the proceedings and his right to have an impartial judge present at all stages of his trial when

1

the court allowed the admitted trial exhibits to go into the jury room during deliberations. We find no merit in any of the claims of error and affirm Davis' conviction.

The facts relevant to the appeal are as follows. Shortly after 7 p.m. on March 9, 2012, Davis was stopped by Officer Kyle Wolf with the Kansas City Police Department for making a right turn without a turn signal. As Officer Wolf approached the vehicle, the passenger darted from the vehicle and was never apprehended. Officer Wolf arrested Davis for driving without a license and searched the vehicle. Cocaine was found inside the vehicle in plain view on the dashboard and in the console. In addition, Officer Wolf found a box of clear plastic baggies commonly used to distribute cocaine and inositol powder commonly used to "cut" cocaine to make the drug less pure.

The State charged Davis with one count of possession of cocaine and one count of possession of drug paraphernalia. The jury convicted Davis of possession of cocaine but acquitted him of possession of drug paraphernalia. Each of Davis' claims of trial error will be addressed in turn.

*Did the trial court commit reversible error when it instructed the jury that a mistrial would involve "tremendous expense and inconvenience?"*

After the close of evidence, but prior to the instructions conference, the trial judge gave the following instruction to the jury:

> "You must not engage in any activity, or be exposed to any information, that might unfairly affect the outcome of this case. Any juror who violates these restrictions I've explained to you jeopardizes the fairness of the proceedings, and a mistrial could result that would require the entire trial process to start over. *As you can imagine, a mistrial is a tremendous expense and inconvenience to the parties, the court and the taxpayers."* (Emphasis added.)

2

Davis contends the emphasized language in the instruction was erroneous and requires a new trial.

Our standard of appellate review proceeds in stages.

"(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

The preservation inquiry in the first step is governed by K.S.A. 2014 Supp. 22-3414(3), which states in relevant part:

"No party may assign as error the giving [of] . . . an instruction . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous. Opportunity shall be given to make the objections out of the hearing of the jury."

Davis concedes he did not object to the instruction at issue but argues that he was never given the opportunity to object outside the hearing of the jury. Another panel of this court noted in an unpublished opinion that it is at least "problematic" for the trial court to instruct the jury about preliminary matters such as juror misconduct without first giving the parties a chance to lodge objections. *State v. Davis*, No. 111,902, 2015 WL 4366527, at *4 (Kan. App. 2015) (unpublished opinion). In that case, the panel dealt with

3

the same preliminary instruction, albeit one given before any testimony was taken. That panel noted that the defendant could have objected or asked for a sidebar conference to object and did not. 2015 WL 4366527, at *4. Consequently, that panel limited its review of the instruction to clear error. 2015 WL 4366527, at *4.

In this case, even though Davis might not have had the opportunity to object to the instruction before it was given, the State is correct that K.S.A. 2014 Supp. 22-3414(3) requires Davis to object "before the jury retires to consider its verdict." Here, the instruction at issue was given by the trial court at the conclusion of the evidence but before the instructions conference occurred. Davis had ample opportunity to object to the instruction at the instructions conference out of the hearing of the jury. Consequently, while the trial court may not have given Davis the opportunity to object to the instruction before it was given to the jury (which we likewise believe to be problematic), Davis had plenty of opportunity to make a timely objection to the instruction outside the presence of the jury prior to the time the jury retired to deliberate. We therefore limit our review of the instruction for clear error.

In *State v. Salts*, 288 Kan. 263, 266, 200 P.3d 464 (2009), our Supreme Court held that it was error to instruct a jury that "'[a]nother trial would be a burden on both sides.'" Among other things, the court determined that this language was in conflict with another commonly given PIK instruction that tells jurors not to concern themselves with what happens after they arrive at a verdict. 288 Kan. at 266. The court instructed the PIK Committee to "strike this language from this instruction." 288 Kan. at 266.

However, our Supreme Court has recently declined to expand the holding of *Salts* to preliminary jury instructions. In *State v. Tahah*, No. 109,857, 2015 WL 5752446, at *8-9 (Kan. 2015), the court held that it was not error for the district court to give the same instruction that is in issue in this case as part of the preliminary instructions that are given to a newly impaneled jury prior to the start of evidence. The court noted its "long and

4

justified history of disapproving" *Allen* instructions "(an *Allen* instruction is any instruction 'that encourages the jury to reach a unanimous verdict so as to avoid a mistrial.' *United States v. McElhiney*, 275 F.3d 928, 935 [10th Cir. 2001]; see *Allen v. United States*, 164 U.S. 492, 501-02, 17 S. Ct. 154, 41 L. Ed. 528 [1896])." *Tahah*, 2015 WL 5752446, at *8. However, the court found that the preliminary instruction at issue was not an *Allen* instruction:

"The preliminary jury instruction here, however, is not an *Allen* instruction. Its character and purpose are entirely different. The instruction occurred at the start of trial, before the presentation of evidence, and warned jurors of the dangers of a mistrial resulting from their own misconduct. As such, its coercive effect (to prevent juror misconduct) is entirely proper and justified. Moreover, because its purpose is proper, the instruction is factually accurate. The prospect of a mistrial due to juror misconduct—especially when viewed from the pretrial vantage point of the parties—is, in fact, equally inconvenient and undesirable to both parties. In particular, it interferes with the defendant's right to a speedy resolution of the criminal allegations against him or her. Given this significant distinction, the *Salts* rationale is inapplicable here.

"Juror misconduct imposes grave costs not only to the parties and others involved in the trial process, but significantly to the integrity of our jury trial criminal justice system itself, which depends on the honest and ethical behavior of jurors. We do not need to look far to see the ease with which today's smartphone equipped jurors can commit misconduct—perhaps even innocently. See *State v. Prator*, No. 111,103, 2015 WL 1123138, at *5 (Kan. App. 2015) (unpublished opinion) (affirming the denial of motion for mistrial after jurors used internet to look up definitions of words used in jury instructions). In light of these considerations, we hold that the warning against juror misconduct contained in PIK Civ. 4th 101.12 is both legally and factually accurate in the criminal context as well as the civil." 2015 WL 5752446, at *9.

Based on the *Tahah* decision, the language of the instruction at issue in this case was not legally or factually inaccurate. The only difference between the instruction given in this case and the instruction given in *Tahah* was in the timing. In *Tahah*, the instruction was given after the jury had been impaneled but before the start of evidence. We note this

5

difference because the court in *Tahah* suggested that the "coercive effect" of the instruction was proper in part because of the timing of the instruction—that is, the jury should be cautioned about misconduct in light of the opportunity for such misconduct to occur during the trial. 2015 WL 5752446, at *9.

In this case, the instruction was given at the close of the evidence but before the parties gave closing arguments. As such, the opportunity for juror misconduct to occur during the evidentiary phase of the trial had come and gone. Nevertheless, as the majority observed in *Tahah*, there is both the opportunity for and danger of juror misconduct during the deliberation phase of the trial. In light of that circumstance, the giving of the instruction prior to juror deliberation was not without purpose. We find no error in the giving of the instruction in this case, although if the instruction is to be given, the better practice would be to give the instruction at the beginning of the trial.

In any event, even if there was error in the timing of the instruction, such error was harmless. To warrant reversal, we must be "firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012). The burden is on Davis to show that instruction error mandates reversal. 295 Kan. at 516.

We find that Davis has not carried his burden to show that the instruction had any impact on the outcome of his trial. While Davis argues that the instruction contradicted other instructions given by the court which admonish the jury not to consider matters not admitted into evidence or the disposition of the case after verdict, we note that the instruction at issue was one that admonished the jury against activities that would constitute juror misconduct. As noted in *Tahah*, the character and purpose of the instruction is entirely different than the instructions given by the district court prior to closing argument. *Tahah*, 2015 WL 5752446, at *9. In that context, the jury was told that

6

a mistrial was a possible consequence of any behavior that they might engage in that would constitute juror misconduct.

There is simply nothing in the record to support the argument that the jury was in any way confused by the jury instructions that were given in this case, or that they were unduly influenced by the language in the preliminary instruction. We note that the jury acquitted Davis of possessing drug paraphernalia. The jury remained quite capable of holding the State to its burden of proof at trial, despite the language in the preliminary instruction.

Finally, there was strong evidence presented at trial of Davis' guilt. Cocaine was found in plain view on the dashboard and in the console of the vehicle. Davis was the owner and the driver of the vehicle. This evidence was uncontested at trial. In view of the entirety of the record, we cannot say that the jury would have reached a different verdict had the preliminary instruction not been given.

*Was the oath administered to the jury unduly coercive?*

Next, Davis argues that the oath administered to the jury was unduly coercive. The oath administered to the jury was as follows: "You and each of you do solemnly swear that you will well and truly try the issues submitted to you in the cause now in hearing and a true verdict render according to the law and evidence. So help you God." Davis argues that requiring each juror to swear that he or she will "a true verdict render" required the jury to return a unanimous verdict, which eliminated the possibility of a hung jury in violation of his constitutional rights to due process and to a trial by an impartial jury.

Davis failed to object to the language of the oath. Consequently, this issue has not been properly preserved for appellate review. In *The State v. Baldwin*, 36 Kan. 1, 7-8, 12

7

P. 318 (1886), our Supreme Court articulated the reason why a contemporaneous objection was necessary:

> "[N]o objection was made to the form of the oath when it was administered, or at any other time prior to its presentation in this court. If there was any irregularity in this respect it should, and probably would, have been objected to at the time it occurred. . . . [I]f the form of the oath was defective the attention of the court should have been called to it at the time the oath was taken, so that it might have been corrected. A party cannot sit silently by and take the chances of acquittal, and subsequently, when convicted, make objections to an irregularity in the form of the oath."

Recently in *State v. Dwigans*, 51 Kan. App. 2d ___, Syl. ¶ 2, 356 P.3d 412 (2015), another panel of this court, relying upon *Baldwin*, held that a "defendant must object at trial to the oath or affirmation given to the jury at a criminal trial in order to preserve for appeal any challenge to the form or administration of the oath or affirmation."

Davis, like the defendant in *Dwigans*, attempts to distinguish *Baldwin* by arguing that he is not attacking the administration of the oath but rather "the language used in the oath." The panel in *Dwigans* found this argument to be unpersuasive, and so do we. As stated in *Dwigans*:

> "Dwigans tries to distinguish her case from *Baldwin* by noting that she is asserting a problem with the 'language of the oath,' rather than an irregularity in the 'administration' of the oath. But her argument is unpersuasive because the defendant in *Baldwin* also asserted a problem with the language of the oath given by the court in that case. Under *Baldwin*, Dwigans' failure to object to the oath and affirmation in the district court leaves her unable to challenge them on appeal. This result makes sense. If Dwigans believed there was a problem with the oath and affirmation given by the court at her jury trial, she should have objected at the trial in order to allow the district court to address and correct any problem. Dwigans cannot remain silent at trial and, upon being convicted, make objections to an irregularity in the form of the oath. *Baldwin*, 36 Kan. at 8." *Dwigans*, 356 P.3d at 414.

8

Because Davis failed to object to the language of the oath at trial, he has not preserved the issue for appellate review.

Even if Davis had preserved the issue for appellate review, his argument that the language of the oath foreclosed the possibility of a hung jury is meritless. Although the jury is typically sworn in mass, each individual juror swears to render a true verdict. There is nothing in the language of the oath that requires the jury as a whole to agree upon a unanimous verdict. A hung jury occurs when individual jurors, consistent with the language of the oath, are unable to reach agreement. Indeed, the only way a hung jury can result is when individual jurors follow the letter of the oath they took. If two jurors are in genuine irreconcilable disagreement as to whether the State has proved its case, the only way a unanimous verdict results is if one juror disregards his or her obligation to render what he or she believes to be a true verdict.

*Did the trial court commit error by sending admitted exhibits to the jury room during deliberations?*

Davis' final arguments relate to the trial judge allowing admitted exhibits to go into the jury room during the jury's deliberations. Davis contends that this deprived him of the right to be present at all critical stages of the trial. Davis further contends that because the trial judge was not present when the exhibits were provided to the jury room during deliberations, his "right to have a judge present during all stages of his trial" was violated. We find no merit in these arguments.

In the first place, Davis never objected when the admitted exhibits were sent into the jury room, and he has made no effort to explain in his brief why we should consider this issue for the first time on appeal. Davis has not demonstrated that this issue has been preserved for appellate review. See *State v. Hunt*, 275 Kan. 811, 813, 69 P.3d 571 (2003).

Second, during closing argument Davis' counsel told the jury about its right to request and look at the exhibits during deliberations and urged the jury to do so. Davis cannot invite error and then complain about that error on appeal. *State v. Divine*, 291 Kan. 738, 742, 246 P.3d 692 (2011).

Third, K.S.A. 22-3420, amended effectively on July 1, 2014, specifically permits the trial judge to allow the jury to take admitted exhibits into the jury room during deliberations. K.S.A. 2014 Supp. 22-3420(c). The amendments to K.S.A. 22-3420 are applied retroactively. K.S.A. 2014 Supp. 22-3420(f).

Fourth, the jury's review of admitted exhibits during deliberations, which required no additional communication from the court, was not a critical stage of the trial. Our Supreme Court has defined critical stages of the trial to include all times when the jury is present in the courtroom and whenever the trial court communicates with the jury. *State v. Herbel*, 296 Kan. 1101, 1109, 299 P.3d 292 (2013). The exhibits at issue here had been admitted into evidence during the trial. No further comment by the trial judge was necessary during the jury's review of these exhibits during deliberations.

In conclusion, we find no trial errors were committed requiring reversal of Davis' conviction for possession of cocaine. We therefore affirm the conviction.

Affirmed.