(262 P.3d 1061)
No. 101,954

STATE OF KANSAS, *Appellee*, v. CHRISTOPHER M. HAMON, *Appellant*.

Opinion filed September 2, 2011.

*Matthew J. Edge* and *Theresa L. Barr*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Steve Six*, attorney general, for appellee.

Before HILL, P.J., GREEN and BRUNS, JJ.

BRUNS, J.: Christopher M. Hamon appeals from his convictions of two counts of attempted second-degree murder, one count of aggravated robbery, and one count of felony theft. We conclude that the search warrant issued for Hamon's motel room was based on probable cause because the supporting affidavit provided a substantial basis for the issuing judge to determine that there was a fair probability that evidence would be found in the place to be searched. We further conclude that Hamon was not entitled to jury instructions on attempted voluntary manslaughter or self-defense because he shot an unarmed man on the ground several feet away. We also conclude that the eyewitness identification instruction used at trial was not given in error. Additionally, we conclude that Hamon was not entitled to another attorney at the hearing on his posttrial motion to dismiss. Finally, we conclude that it was appro-

priate to use Hamon's criminal history score to calculate his sentence. Thus, we affirm the convictions and sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of December 15, 2006, two people were shot within a few blocks of each other in Merriam, Kansas. Earlier that morning, a green Daewoo station wagon had been stolen from a residence in Kansas City, Missouri. The station wagon was found later that morning, with the engine running and the driver's door open, in a ravine adjacent to Interstate 35 in Merriam.

Around 9 a.m., less than two-tenths of a mile from where the stolen station wagon was found, Mark Elliott was making a purchase at Stone Solutions, located at 5125 Merriam Drive. Elliott, a landscape contractor, and Lonnie Roberts, the owner of Stone Solutions, heard the engine of Elliott's pickup truck revving up. Upon running out of the business, Elliott and Roberts found a man and a woman sitting in the truck with the engine running.

Elliott opened the passenger door and pulled the female out of the truck. He then reached through the passenger door and tried to get the keys out of the ignition. At the same time, Roberts attempted to pull the man in the driver's seat out of the truck. Elliott grabbed the man by the collar, and the two struggled. As the struggle continued outside the truck, Elliott saw the man had a handgun.

At some point during the struggle, the handgun came loose and slid along the ground. Elliott crawled on his hands and knees toward the handgun, but the man jumped on his back, pinned him on the ground, and ran towards the handgun. At that point, Elliott grabbed the man's leg, and the man's shoe came off. Once the man reached the handgun, he turned back towards Elliott—who was on the ground about 10 feet away—and fired at him. Although Elliott, who was unarmed, tried to roll away when he saw the man point the handgun at him, he was shot in the shoulder.

Following the shooting, the man left the woman at the scene and ran north on Merriam Lane. The police were called, and the woman was arrested. Following her arrest, the woman initially gave the police the wrong name when identifying herself. In addition, she initially identified the man who shot Elliott as Gary McElroy.

After several hours of questioning, however, the woman finally admitted that her name was Rachelle Bagby and that the man who shot Elliott was Christopher Hamon.

The same morning, a worker reported that a man was attempting to break into All Ridd Pest Control, located near Stone Solutions. The worker observed a man stand outside the business for 2 to 5 minutes and then go inside the basement. While the worker was calling the police, the man unsuccessfully tried to get inside All Ridd's office and then ran away.

A few minutes later, Beth Snell, the owner of Ryukyu Martial Arts, located at 5005 Merriam Drive, had just parked her red Ford Escort in the business' parking lot. Before Snell could get into the business, a man came up behind her and shoved her to the ground. The man, who had a gun in his hand, demanded that Snell give him the keys to her car, and she complied.

Snell's boyfriend, William Wiswell, heard her scream and ran out of Ryukyu to see what was going on. Snell told Wiswell a man was trying to steal her car. When Wiswell ran towards the car, the man pointed a handgun at him and fired. Wiswell was struck in the throat and fell to the ground. The man then took the Ford Escort and drove away.

The Ford Escort stolen from Snell was found 2 days later in Kansas City, Missouri. On the same day, it was discovered that Hamon was staying in room 227 at a Days Inn motel in Kansas City, Missouri, and he was arrested at the motel on an arrest warrant issued from Johnson County. In making the arrest, the police observed several rounds of live ammunition lying on the bed, and they secured the room.

Later that day, a search warrant for room 227 of the Days Inn was issued by a judge in Clay County, Missouri. In executing the search warrant in room 227 of the Days Inn, the police found several personal items belonging to Beth Snell, a .25 caliber handgun, a handgun magazine with two bullets, and a bag containing bullets. The police also found a news article in the room with the headline: "Two men are wounded in Merriam carjacking." The article contained red handwriting that indicated it was from the Kansas City Star, Saturday, December 16, 2006.

Thereafter, Hamon was charged in Johnson County with attempted second-degree murder of Elliott, attempted second-degree murder of Wiswell, aggravated robbery of Snell, and felony theft of the Daewoo station wagon. Prior to trial, Hamon moved to suppress the evidence found as a result of the search of room 227 of the Days Inn. He argued that the evidence obtained should have been suppressed because the affidavit in support of the search warrant lacked probable cause. The district court denied the motion, and the case proceeded to trial.

At trial, Hamon requested a jury instruction for a lesser included offense of attempted voluntary manslaughter of Elliott. In addition, Hamon argued his shooting of Elliott was justified, and he requested a self-defense instruction. The trial judge denied both requests, and the jury convicted Hamon on all counts.

Following the verdict, Hamon filed a pro se motion to dismiss his appointed attorney, claiming that she had told him that the lesser included instruction would be given. He also claimed that had he known that the lesser included instruction was not guaranteed, he would have taken a plea instead of going to trial. The district court, however, found no reason to dismiss the attorney and found that there "are no guarantees" regarding how a judge may rule on any particular issue.

Ultimately, Hamon was sentenced to 228 months for the attempted second-degree murder of Wiswell, 61 months for the attempted second-degree murder of Elliott, 61 months for aggravated robbery, and 7 months for theft. The district court ordered that the sentences run consecutively, for a controlling term of 357 months' imprisonment. The district court also ordered 36 months postrelease supervision and ordered Hamon to pay $26,134.34 in restitution to the victims.

## ISSUES PRESENTED AND ANALYSIS

On appeal, Hamon presents six issues: (1) whether the district court erred in denying his motion to suppress evidence; (2) whether the district court erred when it denied his request for an attempted voluntary manslaughter instruction; (3) whether the dis-

trict court erred when it denied his request for a self-defense instruction; (4) whether the district court erred in giving the eyewitness identification instruction; (5) whether the district court denied his right to counsel; and (6) whether the district court erred in using his prior criminal history in determining the sentence. We will address these issues in the order they were presented.

*The District Court Properly Found that the Search Warrant Affidavit Established Probable Cause and Properly Refused to Suppress the Evidence Found in the Search.*

"[S]uppression of evidence obtained pursuant to a [search] warrant should be ordered only on a case by case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *United States v. Leon,* 468 U.S. 897, 923, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

"Under the holding in *United States v. Leon,* [citation omitted], the Fourth Amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid, except where: 1) the magistrate issuing the warrant was deliberately misled by false information; 2) the magistrate wholly abandoned his or her detached or neutral role; 3) there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or 4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized." *State v. Hoeck,* 284 Kan. 441, Syl. ¶ 1, 163 P.3d 252 (2007).

Whether probable cause exists for the issuance of a search warrant is "a practical, common-sense decision whether, based on all the circumstances in the affidavit, including the veracity and basis of knowledge of any person supplying hearsay information, there is a fair probability that . . . evidence of a crime will be found in a particular place." *State v. Hicks,* 282 Kan. 599, Syl. ¶ 1, 147 P.3d 1076 (2006).

"When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. The standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that

there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard." 282 Kan. 599, Syl. ¶ 2.

Here, Hamon contends that the failure to disclose Bagby's former crimes of dishonesty in the affidavit in support of the application for a search warrant constitutes a deliberate and material omission. A deliberate omission will not render the warrant invalid if the affidavit, even with the omitted material added to it, established sufficient probable cause to issue the warrant. *State v. Schoonover*, 281 Kan. 453, Syl. ¶ 30, 133 P.3d 48 (2006).

The district court found that the affidavit in support of the application for the search warrant was sufficient to advise the issuing judge that Bagby's honesty and veracity were questionable. Because the affidavit expressly states that Bagby lied to the Merriam police for over 2 hours regarding her true identity and the identity of the male suspect, we agree with the district court that the affidavit was sufficient to place the issuing judge on notice that Bagby's veracity could be called into question. Moreover, a review of the affidavit in its entirety reveals that it contained sufficient information from which a reasonable judge could determine that there was a fair probability that evidence would be found in the place to be searched.

The affidavit in support of the application for search warrant summarized the events that had occurred in Merriam on December 15, 2006. According to the affidavit, Bagby ultimately admitted to the Merriam police that she and Hamon had stolen a green station wagon and had wrecked it in Johnson County on the morning of December 15, 2006. This information was consistent with the fact that the police had located the wrecked green station wagon near the scene of the crimes and had discovered that it had been reported stolen in Kansas City, Missouri.

Additionally, the affidavit stated that Bagby told the police that she and Hamon started walking following the wreck and ended up at Stone Solutions, where Hamon attempted to steal a pickup truck. This information was consistent with the statements ob-

tained from the witnesses at the crime scene and confirmed by physical evidence.

It is also important to recognize that before the search warrant affidavit was signed and the search warrant issued, Hamon had already been arrested on a felony warrant for robbery that had been issued in Johnson County. Specifically, the affidavit discloses that Hamon had been arrested in room 227 of the Days Inn located at 7100 N.E. Parvin Road, which was the location to be searched, and that during the arrest, police officers observed "several rounds of live ammunition lying on the bed" in the motel room. On appeal, Hamon does not challenge the validity of the arrest warrant.

Accordingly, we find that the factual allegations set forth in the search warrant affidavit were sufficient to provide a substantial basis for the issuing judge to determine there was a "fair probability" that evidence would be found in room 227 of the Days Inn. Furthermore, we find that even if the omitted material regarding Bagby's prior crimes of dishonesty had been included in the affidavit, there was still sufficient probable cause to issue the search warrant. Thus, we conclude that the district court properly denied Hamon's motion to suppress the evidence obtained as a result of the search warrant.

*The District Court Properly Declined to Give a Lesser Included Offense Instruction on Attempted Voluntary Manslaughter.*

Hamon argues that the district judge's refusal to give the lesser included offense instruction on attempted voluntary manslaughter in connection with the shooting of Elliott constituted reversible error. In addressing this issue, we recognize that "where there is some evidence which would reasonably justify a conviction of some lesser included crime . . ., the judge shall instruct the jury as to the crime charged and any such lesser included crime." K.S.A. 22-3414(3). "There is, however, no duty to instruct on a lesser included offense if the jury could not reasonably convict the defendant of the lesser included offense based on the evidence presented. [Citations omitted.]" *State v. Moore*, 287 Kan. 121, 130, 194 P.3d 18 (2008). "When reviewing a district judge's refusal to give a requested instruction, this court must view the evidence in the light

most favorable to the requesting party. [Citation omitted.]" 287 Kan. at 130.

Murder in the second degree is the killing of a human being committed intentionally or recklessly, with extreme indifference to the value of life. K.S.A. 21-3402. Voluntary manslaughter is the intentional killing of a human being upon sudden quarrel, in the heat of passion, or with the honest belief that circumstances justified the use of deadly force. K.S.A. 21-3403. "A person is justified in using deadly force . . . if such person reasonably believes deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person." K.S.A. 21-3211(b).

Hamon contends that he shot Elliott in the heat of passion. "To justify instructing the jury on the lesser included offense of voluntary manslaughter arising from sudden quarrel or heat of passion, there must be severe provocation." *State v. Northcutt*, 290 Kan. 224, Syl. ¶ 4, 224 P.3d 564 (2010). A mere altercation is insufficient provocation to justify the use of force. 290 Kan. 224, Syl. ¶ 5. Rather, "[t]he provocation . . . must be sufficient to cause an ordinary man to lose control of his or her actions and reason." *Northcutt*, 290 Kan. 224, Syl. ¶ 7.

Here, it was Hamon who provoked Elliott by attempting to steal Elliott's pickup truck. Furthermore, it was Hamon who brought a deadly weapon to the scene of the crime, and it was in his control when he shot Elliott, who was unarmed. Moreover, Elliott was legally "justified in the . . . use of force against [Hamon] for the purpose of preventing or terminating an unlawful interference with [his] property." See K.S.A. 21-3213.

As the person who initially provoked this incident, Hamon would have to show that he exhausted every reasonable means to escape such danger or that he clearly indicated his desire to terminate the struggle before he would have had the right to use force—especially deadly force—against Elliott. See K.S.A. 21-3214(c)(1). However, there is no evidence in the record to show that Hamon took such action. Instead, the record reveals that once Hamon broke away from Elliott, he picked up the handgun, pointed it at his unarmed victim, pulled the trigger, and shot an unarmed man lying on the ground several feet away before making his escape.

Accordingly, we find that there is no evidence of provocation by Elliott that could have justified Hamon's use of force, let alone deadly force. Thus, the district court was not required to instruct the jury on attempted voluntary manslaughter.

*The District Court Properly Declined to Give a Self-defense Instruction.*

For the same reasons we found that an attempted voluntary manslaughter instruction was not warranted in this case, we conclude that the district court was correct in refusing to give a self-defense instruction to the jury. The use of deadly force can only be justified when a person reasonably believes that the other person poses an imminent threat of death or great bodily harm and a reasonable person in the same circumstances would believe that the use of deadly force was necessary. K.S.A. 21-3211(b). See *McCracken v. Kohl*, 286 Kan. 1114, 1121, 191 P.3d 313 (2008). Here, we find that a reasonable person would not believe that deadly force was necessary.

*The Eyewitness Identification Instruction Given to the Jury Was Not Erroneous.*

Hamon argues that the eyewitness identification instruction given by the district court, which was identical to PIK Crim. 3d 52.20, improperly included a factor that asked the jury to consider the "degree of certainty" a witness had at the time he or she identified the accused. Because Hamon did not object to the instruction at trial, this court must determine whether the given instruction was clearly erroneous. See K.S.A. 22-3414(3). Jury instructions are clearly erroneous if a real possibility exists that the jury would have rendered a different verdict had the trial error not occurred. *State v. Reid*, 286 Kan. 494, Syl. ¶¶ 11-12, 186 P.3d 713 (2008).

Most of the factors for evaluating the reliability of eyewitness identification testimony enumerated in PIK Crim. 3d 52.20, including the "degree of certainty" factor, were identified by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). In *State v. Warren*, 230 Kan. 385, 397, 635 P.2d 1236 (1981), the Kansas Supreme

Court adopted the *Biggers* factors. In response, PIK Crim. 3d 52.20 was promulgated. See *State v. Mann*, 274 Kan. 670, 677-78, 56 P.3d 212 (2002).

Subsequently, the Kansas Supreme Court also accepted the "slightly different factors" set forth by the Utah Supreme Court in *State v. Ramirez*, 817 P.2d 774, 780-81 (Utah 1991). See *State v. Hunt*, 275 Kan. 811, 817-18, 69 P.3d 571 (2003). The *Hunt* court found that its acceptance of the *Ramirez* factors "should not be considered as a rejection of the *Biggers* model but, rather, as a refinement in the analysis." *Hunt*, 275 Kan. at 818. The following year, in *State v. Trammell*, 278 Kan. 265, 270, 92 P.3d 1101 (2004), the Kansas Supreme Court found that the holding in *Hunt* does not support a claim that PIK Crim. 3d 52.20 was erroneous.

More recently, in *Reid*, 286 Kan. at 518, our Supreme Court declined the invitation to clarify whether PIK Crim. 3d 52.20 was properly written. It is also significant to note that the PIK Committee did not remove the degree of certainty factor from PIK Crim. 3d 52.20 in the years that have passed since the *Hunt* decision. Thus, "[a]s it stands, the only word from the court is that there has been no explicit rejection of the *Biggers* factors." *State v. Hernandez*, 44 Kan. App. 2d 524, 532, 239 P.3d 103 (2010), *rev. denied* 294 Kan. 945 (2012).

Furthermore, we are not convinced there is a real possibility the jury would have rendered a different verdict had the degree of certainty factor not been included in the jury instructions. At trial, Hamon did not deny that he shot Elliott, but he claimed that he did so in self-defense or in the heat of passion. Moreover, there is substantial evidence in the record connecting Hamon to the crime scene at Ryukyu Martial Arts, including the fact that personal items stolen from Snell were found in Hamon's motel room following his arrest.

Finally, it is important to recognize that Hamon not only failed to object to the eyewitness identification instruction at trial, but he also requested a similar instruction that included the degree of certainty factor about which he now complains. As such, even if it were error to include the degree of certainty factor in the jury instructions, Hamon invited the error. Thus, Hamon is not allowed

to complain about the trial court's action on appeal. *State v. Galle-gos*, 286 Kan. 869, 877, 190 P.3d 226 (2008) (" '[A] litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal.' ").

Hence, we find that the district court properly instructed the jury regarding the law in this case based on the current status of Kansas law. We further find that there is no real possibility that the jury would have reached a different verdict had the degree of certainty factor instruction not been given. We therefore conclude that the district court's use of PIK Crim. 3d 52.20 was not clearly erroneous.

*Hamon's Right to Counsel Was Not Violated at the Hearing on His Motion to Dismiss Counsel.*

Hamon next argues that the district court violated his right to effective counsel at all stages of the proceeding under the Sixth Amendment to the United States Constitution by failing to appoint a conflict-free attorney to argue the motion for new counsel on his behalf. However, a defendant only has a constitutional right to counsel at critical stages of the proceedings. *State v. Andrews*, 228 Kan. 368, 377, 614 P.2d 447 (1980); see *Coleman v. Alabama*, 399 U.S. 1, 7, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970). Critical stages are those that amount to trial-like confrontations during which counsel would help the accused in meeting his or her adversary. *Rothgery v. Gillespie County*, 554 U.S. 191, 212 n.16, 128 S. Ct. 2578, 171 L. Ed. 2d 366 (2008).

The Kansas Supreme Court has held that "a defendant is not entitled to a hearing and the appointment of counsel on every post-trial motion." *State v. Pierce*, 246 Kan. 183, 188, 787 P.2d 1189 (1990). Moreover, whether new counsel should be appointed "is reviewed under an abuse of discretion standard, which asks whether any reasonable person would take the view adopted by the court. [Citation omitted.]" *State v. Bryant*, 285 Kan. 970, 986, 179 P.3d 1122 (2008). "Furthermore, to warrant substitute counsel, a defendant must show 'justifiable dissatisfaction' with appointed counsel." 285 Kan. at 986. "Justifiable dissatisfaction includes a showing of a conflict of interest, an irreconcilable conflict,

or a complete breakdown in communications between counsel and the defendant. [Citation omitted.]" 285 Kan. at 986.

At the posttrial hearing, Hamon was properly allowed to directly address the district judge and to state the reasons why he believed his attorney should no longer represent him. Although the State was provided with the opportunity to respond, the hearing did not involve a trial-like confrontation. Accordingly, we conclude that Hamon's rights were appropriately protected by the district court and there is no reason to believe the outcome of the motion to dismiss his attorney would have been any different had Hamon been represented by an independent attorney at the hearing.

Hamon also contends that allowing his attorney to be present at the hearing was an actual conflict of interest. In *State v. Vann,* 280 Kan. 782, Syl. ¶ 1, 127 P.3d 307 (2006), it was held that a district court abuses its discretion when it fails to inquire further after becoming aware of a potential conflict of interest. In the present case, however, the attorney did not advocate on Hamon's behalf at the hearing. Rather, the attorney recognized on the record that it would not be appropriate for her to speak on the motion. Moreover, Hamon did not request the appointment of another attorney to represent him at the hearing.

Hamon's complaint about his attorney's representation rests on his claim that he was told that he would get a lesser included offense instruction. As the district judge noted, Hamon was present at the jury instruction conference in which his attorney requested an attempted voluntary manslaughter instruction and vigorously argued on his behalf regarding the instructions to be given to the jury. It was not until after a verdict was rendered by the jury that Hamon brought this matter to the district judge's attention. At that point, Hamon claimed that he would not have gone to trial if he had known that his request for an attempted voluntary manslaughter instruction could be denied. Under these circumstances, it was reasonable for the district court to conclude that Hamon's request to dismiss his attorney was based on "dissatisfaction with the result more than anything else."

Hamon's complaints are akin to allegations of ineffective assistance of counsel. See *Harris v. State,* 288 Kan. 414, 416, 204 P.3d

557 (2009). In fact, Hamon stated in his brief that his assertions show that his "counsel's performance surely fell below acceptable standards." As the district court noted, the preferred method of asserting an ineffective counsel claim is to bring a collateral proceeding under K.S.A. 60-1507 after the direct appeal is final. See *Rice v. State*, 37 Kan. App. 2d 456, 460, 154 P.3d 537, *rev. denied* 284 Kan. 946 (2007).

For these reasons, we conclude that the district court appropriately protected Hamon's constitutional and statutory rights at the posttrial hearing. We further conclude that the district court had a reasonable basis to deny Hamon's motion to dismiss counsel and that there was no abuse of discretion.

*The District Court Did Not Violate Hamon's Constitutional Rights When It Used His Criminal History to Calculate His Sentence.*

Hamon's final complaint on appeal is that the district court violated his constitutional rights when it used his criminal history to calculate his sentence without following the procedural safeguards of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Apprendi* requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum . . . be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. However, a defendant's prior convictions are explicitly excluded from this requirement. 530 U.S. at 490.

The Kansas Supreme Court has recognized the continuing validity of this prior conviction exception to *Apprendi*'s requirements. See *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 25, 245 P.3d 1030 (2011); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). Because our Supreme Court has given no indication that it is departing from that precedent, this court is bound by these decisions. See *State v. Barajas*, 43 Kan. App. 2d 639, 649, 230 P.3d 784 (2010). We conclude, therefore, that the district court did not violate Hamon's constitutional rights when it used his criminal history score to calculate his sentence.

Affirmed.