No. 107,351

STATE OF KANSAS, *Appellee*, v. PATRICIO BRISENO, *Appellant*.

(326 P.3d 1074)

Opinion filed June 13, 2014.

*Matthew J. Edge,* of Kansas Appellate Defender Office, was on the brief for appellant.

*Jennifer L. Myers,* assistant district attorney, *Jerome A. Gorman,* district attorney, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

NUSS, C.J.: Patricio Briseno appeals his convictions on one count of first-degree premeditated murder and three counts of attempted first-degree murder arising out of a drive-by shooting. The issues on appeal, and our accompanying holdings, are as follows:

1. Did the district court commit reversible error by failing to give an unrequested limiting jury instruction regarding evidence of Briseno's gang membership? No.
2. Did the district court commit reversible error by instructing the jury it could consider the degree of certainty with which eyewitnesses identified Briseno? No.
3. Did the district court commit sufficient errors to deprive Briseno of a fair trial? No.

Accordingly, we affirm Briseno's convictions.

### FACTS AND PROCEDURAL BACKGROUND

Four teenage boys, Ricardo Zamora, Edgar Gracia, Francisco Hernandez, and David Linares, were gathered in front of Hernandez' house in Kansas City, Kansas. At approximately 3:10 p.m., a black SUV approached the house, and one of its occupants started shooting. The boys tried to run, but several bullets struck 13-year-old Zamora, mortally wounding him. A bullet also hit Gracia, but he recovered from his wound. Hernandez and Linares escaped without physical harm.

The wounded Gracia told police at the scene he was a member of the F-13 gang and the decedent Zamora was affiliated with it. Gracia also said F-13 was feuding with a rival street gang named SPV.

Police eventually located and interviewed Hernandez and Linares. Hernandez told detectives he also was a member of F-13. He said that as the black SUV approached the boys, decedent Zamora yelled "SPV" and a vehicle occupant started shooting. According to Hernandez, he did not know who was in the SUV or who was responsible for the gunshots.

Linares gave a substantially similar account. He initially told detectives he did not know who was in the SUV. But he eventually

said Briseno and a man known as "Droopy" were occupants. According to Linares, the driver was Briseno. Detectives later identified Droopy as Briseno's codefendant Juan Lopez.

Police then contacted Briseno at a Briseno family residence. Briseno or one of his family members told the officers he had a black SUV parked in a neighbor's garage across the street. The neighbor allowed police in the garage, where they found an SUV matching the description of the one involved in the shooting.

The State charged both Briseno and Lopez with one count of first-degree premeditated murder (Zamora) and three counts of attempted first-degree murder (Gracia, Hernandez, and Linares). The two defendants were tried together.

The State filed a motion to admit evidence showing Briseno belonged to the SPV gang, which the court granted. Multiple witnesses then testified Briseno was indeed such a member. Briseno did not request a limiting instruction informing the jury the gang evidence was admitted only for a specific purpose, and the court did not give one on its own.

Several eyewitnesses also identified Briseno as the driver of the black SUV. Patrick Fischer testified that he was delivering mail in the neighborhood on the day of the shooting. As he was preparing to cross the street two houses away from Hernandez' house, he noticed a black SUV approaching from his right. Fischer looked directly at the driver to determine whether he had time to cross in front and observed the driver was a young, Hispanic male with facial hair. Fischer also observed the SUV had four occupants.

As Fischer crossed the street in front of the SUV, he noticed the group of boys to his left in front of Hernandez' house, although he erroneously testified the group contained three boys and a girl. Once the SUV passed behind him, Fischer heard gunshots from behind and to his left. He ducked behind a cinderblock wall and counted approximately seven gunshots before he looked up and saw a gun sticking out of the SUV's rear passenger window.

Fischer told police at the scene he did not recognize the SUV's occupants. Several days later he looked at a photo lineup, and with 70% assurance he identified Briseno as the driver. But when Fischer later testified at the preliminary hearing, he failed to identify

Briseno in the courtroom. He eventually identified Briseno at trial, however. After counsel for the State and Briseno both inquired about his degree of certainty in making the identification, Fischer responded he was "sure" and "confident" that Briseno was the driver. But Fischer could not identify the shooter.

Jacqueline Segura also identified Briseno in her testimony. According to Segura, she was sitting in traffic at a stop sign approximately a half block from where the shooting occurred when she saw a black SUV speed through the intersection from the opposite direction. She believed the SUV had three or four occupants, but she was unsure because of its tinted windows.

Segura testified that the driver was a young, Hispanic male. She then specifically identified Briseno as the driver. Segura was able to identify Briseno because she had seen him driving the same SUV around the neighborhood on previous occasions.

In addition to observers Fischer and Segura, at trial F-13 member Hernandez also testified to identify Briseno as the SUV driver and to acknowledge Linares as a gang member. Finally, while Linares was unavailable to testify, the State presented evidence through a detective that in a prior interview Linares had also identified Briseno as the driver. The district court ultimately instructed the jury that it could consider the degree of certainty with which the eyewitnesses identified Briseno as the driver.

The jury convicted Briseno, but acquitted Lopez, of one count of first-degree premeditated murder and three counts of attempted first-degree murder. The court sentenced Briseno to a hard 25 life sentence for first-degree premeditated murder and concurrent sentences of 155 months for each of the other counts. Jurisdiction over Briseno's appeal is proper under K.S.A. 2013 Supp. 22-3601(b)(3) (life sentence imposed).

More facts will be added as necessary to the analysis.

## ANALYSIS

Issue 1: *The district court did not err by failing to give a limiting instruction regarding evidence of Briseno's gang membership.*

Briseno argues that the district court committed reversible error by failing to give an instruction advising the jury of the limited

purpose for which the evidence of his gang membership was admitted. He did not request a limiting instruction but contends that gang evidence is so inherently prejudicial that its admission should require such an instruction in all circumstances. According to Briseno, that failure to instruct is reversible error because the State's other evidence was weak, permitting the jury to give undue weight to his gang affiliation.

The State responds Briseno has failed to meet his burden of proving the failure to give the unrequested instruction constituted clear error. We agree with the State.

*Standard of review and framework*

Because Briseno failed to request the instruction, our standard of review is informed by K.S.A. 22-3414(3) and *State v. Williams*, 295 Kan. 506, 286 P.3d 195 (2012). As we stated in *Williams*, a jury instruction issue, like other issues, is subject to a stair-step process on appeal:

"(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless." *Williams*, 295 Kan. 506, Syl. ¶ 1.

As for the first step, we have recognized that K.S.A. 22-3414(3) creates a higher hill for a party that fails to request an instruction:

"K.S.A. 22-3414(3) establishes a preservation rule for instruction claims on appeal. It provides that no party may assign as error a district court's giving or failure to give a particular jury instruction . . . unless: (a) that party objects before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds for objection; or (b) the instruction or the failure to give the instruction is clearly erroneous. If an instruction is clearly erroneous, appellate review is not predicated upon an objection in the district court." *Williams*, 295 Kan. 506, Syl. ¶ 3.

As we restated in *State v. Herbel*, 296 Kan. 1101, 299 P.3d 292 (2013), the test for determining whether a jury instruction is clearly erroneous is composed of two parts:

"First, 'the reviewing court must . . . determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited

review of the entire record.' " 296 Kan. at 1121 (quoting *Williams*, 295 Kan. 506, Syl. ¶ 4).

If error is found, then the second part is considered, *i.e.*, the clearly erroneous analysis moves to a reversibility inquiry and

" 'the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal.' *Williams*, 295 Kan. 506, Syl. ¶ 5." 296 Kan. at 1121.

Accordingly, we must first determine if the limiting instruction should have been given because it was legally and factually appropriate.

### Discussion

We have consistently held that, "absent a request for a limiting instruction concerning gang evidence and absent any objection for failure to give a limiting instruction on gang evidence, a trial court is not obligated to give such an instruction." *State v. Conway*, 284 Kan. 37, 50, 159 P.3d 917 (2007); see *State v. Gholston*, 272 Kan. 601, 614-15, 35 P.3d 868, *cert. denied* 536 U.S. 963 (2002); *State v. Jamison*, 269 Kan. 564, 568, 7 P.3d 1204 (2000). In *Conway*, we considered, and then explicitly rejected, the same argument Briseno advances in his case: that evidence of gang affiliation is so inherently prejudicial that district courts should always give a limiting instruction when it is admitted. But Briseno provides no reason why we should reconsider our long-standing rule, and we decline to do so.

And Briseno does not argue the court abused its discretion in weighing the probative value of his gang affiliation against the potential for prejudice. See *State v. Peppers*, 294 Kan. 377, 391, 276 P.3d 148 (2012) (balancing gang evidence's probative value against prejudice is reviewed for an abuse of discretion). Accordingly, we do not address that issue. See *State v. Frierson*, 298 Kan. 1005, 1021, 319 P.3d 515 (2014) (issue not briefed is deemed waived or abandoned).

So the district court did not err by failing to give a limiting instruction. Because there was no error, our analysis of Briseno's

argument ends. See *Williams*, 295 Kan. 506, Syl. ¶¶ 4-5 (If error is found, the court must determine whether it was clear error and therefore reversible.).

Issue 2: *The district court did not commit reversible error by instructing the jury it could consider the degree of certainty with which eyewitnesses identified Briseno.*

Briseno next argues that the district court committed reversible error by failing to delete subparagraph 6 of PIK Crim. 3d 52.20 from the cautionary instruction given to the jury about eyewitness identification testimony. The instruction stated in full:

"The law places the burden upon the State to identify the defendant. The law does not require the defendant to prove he has been wrongly identified. In weighing the reliability of eyewitness identification testimony, you first should determine whether any of the following factors existed and, if so, the extent to which they would affect accuracy of identification by an eyewitness. Factors you may consider are:

"1. The opportunity the witness had to observe. This includes any physical condition which could affect the ability of the witness to observe, the length of time of observation, and any limitations on observation like an obstruction or poor lighting;

"2. The emotional state of the witness at the time including that which might be caused by the use of a weapon or threat of violence;

"3. Whether the witness had observed the defendants on earlier occasions;

"4. Whether a significant amount of time elapsed between the crime charged and any later identification;

"5. Whether the witness ever failed to identify the defendants or made any inconsistent identification;

"6. *The degree of certainty demonstrated by the witness at the time of any identification of the accused*; and

"7. Whether there are any other circumstances that may have affected the accuracy of the eyewitness identification." (Emphasis added.)

Briseno emphasizes this court explicitly disapproved subparagraph 6 in *State v. Mitchell*, 294 Kan. 469, 275 P.3d 905 (2012). There we held the degree-of-certainty factor, as worded in PIK Crim. 3d 52.20, should not be included in jury instructions because it prompts the jury to conclude that eyewitness identification is more reliable when the witness expresses greater certainty. 294 Kan. 469, Syl. ¶ 4. According to Briseno, use of this degree-of-

certainty factor constitutes clear error because it improperly focused the jury's attention on the certainty of the eyewitnesses.

The State concedes use of this factor in the instruction is erroneous per *Mitchell.* But the State contends that because Briseno did not request the instruction, reversal requires clear error and he has not met his burden of showing it. Again, we agree with the State.

### Standard of review

We agree with the State that because Briseno did not object to this instruction, we apply the same clearly erroneous framework and standard of review already discussed. See *Herbel,* 296 Kan. at 1121 (citing *Williams,* 295 Kan. 506, Syl. ¶¶ 1, 3).

### Discussion

Briseno focuses his attack on mail carrier Fischer's testimony. Briseno argues the error in using the degree-of-certainty factor in the instruction was clear error because Fischer was the State's most important and reliable witness.

The State correctly concedes the legal error of including this factor in the instruction. See *Mitchell,* 294 Kan. at 481; *State v. Anderson,* 294 Kan. 450, Syl. ¶ 2, 276 P.3d 200, *cert. denied* 133 S. Ct. 529 (2012). And we have held the factor's inclusion is erroneous even if, as here, the trial occurred before release of those opinions. See *State v. Marshall,* 294 Kan. 850, 867, 281 P.3d 1112 (2012). With the State's concession of error, we proceed to whether it was clear error, *i.e.,* one requiring reversal.

As mentioned, an instruction is clearly erroneous only if "the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." *Williams,* 295 Kan. at 516. To make this determination for Briseno, we first consider (1) whether the identification was crucial to the State's case and (2) whether there was an opinion of certainty stated by the eyewitness. *State v. Cruz,* 297 Kan. 1048, 1068, 307 P.3d 199 (2013).

Here, the answer to both inquiries is indisputably "yes." The State concedes, without explanation, that Fischer's identification

of Briseno was crucial to its case. At the outset we observe the State bears the burden of identifying the defendant, and a defendant is never responsible to prove that he or she has been misidentified. See *Marshall*, 294 Kan. at 869 (quoting *Perry v. New Hampshire*, 565 U.S. ___, 132 S. Ct. 716, 729, 181 L. Ed. 2d 694 [2012]); PIK Crim. 3d 52.20. And we agree Fischer was crucial: as Briseno argues, Fischer was the State's only witness who was not a gang member who testified Briseno was driving the black SUV when the shots were actually fired. The importance of Fischer's contribution is reinforced by Briseno's argument that the jury only acquitted his codefendant Lopez because, unlike Fischer identifying Briseno, no reliable eyewitness identification testimony placed Lopez at the crime scene. Only Gracia and Linares, both gang members, identified Lopez as the shooter.

The parties also agree eyewitness Fischer stated an opinion expressing his degree of certainty. Fischer testified multiple times to his degree of certainty about Briseno's identification, and both the State and defense counsel asked Fischer how confident he was in his identification.

But just because an identification is crucial to the State's case and the eyewitness states an opinion of certainty, our inquiry does not end. Instead, we next " 'consider the impact of the jury instruction in light of the entire record and additional considerations.' " *Cruz*, 297 Kan. at 1069 (quoting *Marshall*, 294 Kan. at 868). This particular review requires consideration of procedural safeguards and the total amount of inculpatory evidence. See *State v. Dobbs*, 297 Kan. 1225, 1238-40, 306 P.3d 1258 (2013).

When reviewing an erroneous eyewitness jury instruction in *Marshall*, we considered several procedural safeguards enunciated by the United States Supreme Court in *Perry*. We recognized the presence of those safeguards diminishes the risk the jury placed " 'undue weight on eyewitness testimony of questionable reliability.' " 294 Kan. at 869 (quoting *Perry*, 132 S. Ct. at 728). As we later stated in *Dobbs*:

"Those safeguards include, but are not limited to, [1] the defendant's constitutional right to confront the witnesses against him or her; [2] the defendant's constitutional right to effective assistance of counsel 'who can expose the flaws in

the eyewitness' testimony during cross-examination and focus the jury's attention on the fallibility of such testimony during opening and closing arguments' "; [3] eyewitness-specific jury instructions that " 'warn the jury to take care in appraising identification evidence' "; and [4] the constitutional requirement that the State prove every element of the crime beyond a reasonable doubt." *Dobbs*, 297 Kan. at 1238 (quoting *Marshall*, 294 Kan. at 868-69 [quoting *Perry*, 132 S. Ct. at 728-29]).

In *Dobbs*, we considered whether a degree-of-certainty factor in the eyewitness identification jury instruction was clearly erroneous. We concluded it was not in light of the relevant procedural safeguards and the entire record. See 297 Kan. at 1241.

In reaching our conclusion, we emphasized that Dobbs took advantage of the relevant procedural safeguards. Specifically, we noted that he availed himself of vigorous cross-examination that exposed inconsistencies or errors in the identifying eyewitness' testimony. During closing arguments, his lawyer also reminded the jury of the eyewitness' inconsistencies and ambiguities.

We further concluded in *Dobbs* that other significant evidence linked Dobbs to the crime. Because the State did not rely solely on the eyewitness' testimony, we discounted the impact that the erroneous instruction had on the jury's verdict. *Dobbs'* result is also consistent with other cases where we have considered this issue. See *e.g., Cruz*, 297 Kan. at 1070 (concluding that an erroneous degree-of-certainty instruction was not clearly erroneous); *Marshall*, 294 Kan. at 868-69 (same). And we now reach the same conclusion here.

Briseno had the benefit of each procedural safeguard identified in *Perry*. His counsel exercised Briseno's right to confront his accuser. See *Perry*, 132 S. Ct. at 728-29. Counsel attacked Fischer's credibility by questioning Fischer about inconsistencies in his testimony, including identifications he made on the day of the shooting, during the police lineup, at the pretrial hearing, and later at trial. Defense counsel also emphasized discrepancies in Fischer's testimony regarding the color and model of the dark SUV. Her cross-examination about these inconsistencies cast some doubt on the reliability of Fischer's identification.

Additionally, defense counsel emphasized that Fischer originally told police he only saw the driver's facial hair and the driver had a

hat pulled low over his face. These questions cast further doubt on Fischer's ability to perceive the driver's identity. Further, Fischer's eyewitness identification was subject to cross-examination not only by counsel for Briseno but also by codefendant Lopez. For example, Lopez' counsel used Fischer's professed degree of certainty against him by reminding the jurors that Fischer was also "sure" that there had been a girl in the group of boys.

During closing argument, Briseno's counsel again attacked Fischer's credibility. See *Perry*, 132 S. Ct. at 728-29. She reminded the jury that Fischer initially told police he only "got a glimpse" of the driver, who had a hat pulled low over his face. She also noted that Fischer had become more certain in his identification since the day of the shooting, suggesting his testimony may have been affected by the police lineup and his repeated opportunities to view Briseno once the court proceedings began. Finally, she emphasized other errors and inconsistencies in Fischer's testimony, including his testimony that a girl was with the boys.

As to the last two procedural safeguards from *Perry*, they are unquestionably present here. See *Perry*, 132 S. Ct. at 728-29. Although this court has concluded that district courts should not use the degree-of-certainty subparagraph of PIK Crim. 3d 52.20, the remaining six subparagraphs provided the jurors with valuable warnings about the potential hazards of eyewitness testimony, *e.g.*, "(2) [t]he emotional state of the witness at the time including that which might be caused by the use of a weapon or threat of violence." Finally, the State obviously had the burden of proving Briseno guilty beyond a reasonable doubt. See K.S.A. 21-3109.

We additionally observe that Fischer's eyewitness identification was not the only evidence linking Briseno to this crime. See *Dobbs*, 297 Kan. at 1240 (other circumstantial evidence linked defendant to crime). Specifically, Segura's testimony identified Briseno—whom she knew from the neighborhood—as the driver of the black SUV speeding away from the scene only moments after the shooting. The State also presented evidence that both Hernandez and Linares named Briseno as the SUV's driver. Finally, circumstantial evidence linking Briseno to the SUV on the day of the shooting was introduced throughout the trial, *e.g.*, he had an SUV matching

the description of the one used in the shooting. Fischer's eyewitness testimony was important to the State's case, but it was far from the only evidence implicating Briseno in the crimes.

After hearing all of the evidence and argument, the jury ultimately concluded that the State had met its burden to prove Briseno guilty beyond a reasonable doubt. And we conclude Briseno has failed to firmly convince us the jury would have reached a different verdict had the court omitted the erroneous degree-of-certainty provision in the instruction. See *Williams*, 295 Kan. at 516. Simply put, there were ample procedural safeguards and other evidence to counteract the erroneous instruction and to show that Briseno committed the crimes.

Issue 3: *Cumulative error did not deprive Briseno of a fair trial.*

Briseno finally asserts that even if the instructional issues do not establish reversible error when considered individually, their cumulative effect denied him a fair trial. So reversal of his convictions is required.

But the only error was the court's use of the degree-of-certainty factor in its jury instructions regarding eyewitness identification, which we determined was not clear error requiring reversal. We agree with the State that a single nonreversible error cannot constitute reversible cumulative error. *State v. Littlejohn*, 298 Kan. 632, 659, 316 P.3d 136 (2014) (citing *State v. Haberlein*, 296 Kan. 195, 212, 290 P.3d 640 [2012]).

The judgment of the district court is affirmed.